IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NFL PROPERTIES LLC and PITTSBURGH STEELERS SPORTS, INC., Plaintiffs, v NICHOLAS WOHLFARTH and JENNIFER WOHLFARTH *doing business as* TURTLE CREEK SPORTSWEAR Defendants. | 2:05-cv-67 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is PLAINTIFFS' PETITION FOR COUNSEL FEES AND COSTS (Document No. 64) filed by NFL Properties LLC and Pittsburgh Steelers LLC (collectively "Plaintiffs"). In support of their Petition, Plaintiffs have submitted itemizations of attorney and support personnel time expended from the New York law firm Debovoise & Plimpton LLP ("Debevoise"), the Pittsburgh law firm Buchanan Ingersoll & Rooney PC ("Buchanan"), and a private investigation firm, Klink & Co., Inc. ("Klink"). Plaintiffs have also submitted Declarations from attorneys Jeremy Feigelson of Debevoise and Brian Simmons of Buchanan in support of their attorney fees and costs. Defendants Nicholas and Jennifer Wohlfarth, d/b/a Turtle Creek Sportswear ("Turtle Creek Sportswear") have filed a brief in opposition to the Petition , with numerous exhibits attached and Plaintiffs' Petition is ripe for disposition.

The only other remaining issue is the amount of profits to be disgorged by Turtle Creek Sportswear from its sales of Enjoined Apparel during the 2010-2011 football season. That issue is also ripe for decision. Thus, this Memorandum Opinion and Order will resolve these outstanding issues in this case.

1

Factual and Procedural Background

In 2005, the parties entered into a Consent Order by which Defendants were enjoined from marketing and selling apparel that would infringe on NFL and/or Pittsburgh Steelers trademarks and logos. As relevant to the instant dispute, the 2005 Consent Order provides that if Plaintiffs commence any legal action to enforce the Consent Order and the Court finds that a violation has occurred, "the Court shall, in addition to any other remedies or sanctions, award Plaintiffs their reasonable attorneys' fees and costs."

On January 3, 2011, Plaintiffs filed a motion in this Court to enforce the 2005 Consent Order. On January 26, 2011, the Court conducted an evidentiary hearing into the issues and on February 18, 2011, Findings of Fact, Conclusions of Law and an Order of Court were issued. Briefly summarized, the Court found that Turtle Creek Sportswear had violated the Consent Order and Defendants were ordered to: (1) cease and desist from marketing the "Enjoined Apparel"; (2) gather the existing inventory of Enjoined Apparel and deliver it to Plaintiffs; and (3) account for the profits it realized from the sale of Enjoined Apparel during the 2010-2011 football season to facilitate the entry of an order of disgorgement of said profits. On March 18, 2011, Defendants filed a Report of Compliance with the Court's Order (Document No. 67). In support of the accounting, Defendants had engaged J.E. Moody, CPA, of Moody & Associates, Certified Public Accountants ("Moody"), to prepare a calculation of the profits that had been realized by Turtle Creek Sportswear from the sale of the Enjoined Apparel. Plaintiffs have not contested the calculation of net income submitted by Moody on March 17, 2011.

In its February 18, 2011 Order, the Court had also found that "Plaintiffs are entitled to an award of reasonable attorneys' fees and costs for having prevailed in this action." In the pending Petition, Plaintiffs seek an award of counsel fees and costs for Debevoise of $25,390.77; counsel

fees and costs for Buchanan of $11,688.57; and fees and costs for Klink of $4,515.00; for a total claim of $41,594.34. Defendants challenge numerous aspects of these claimed counsel fees and costs. Counsel for Plaintiffs aver that the counsel fees and costs for which they seek recovery are less than half of the actual amounts incurred in litigating this case.

Counsel Fees and Costs

The 2005 Consent Order mandates that if Plaintiffs commence a legal action to enforce the Consent Order and the Court finds that a violation has occurred, the Court shall award a "reasonable" counsel fee for Plaintiffs. As a starting point to determine the reasonableness of the claimed counsel fees, the Court should evaluate both the hourly rates charged by counsel and the number of hours worked to determine the "lodestar" rate. The lodestar rate is calculated by multiplying a reasonable hourly rate in the relevant legal community by the reasonable number of hours expended. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Once the lodestar amount has been calculated, a court has discretion to adjust the fee upward or downward, based on a variety of factors. *United Auto Workers Local 259 Social Sec. Dept. v. Metro Auto Center*, 501 F.3d 283, 292 (3d Cir. 2007) (discussing factors). The burden to establish reasonableness is on the party seeking such fees. *Rode,* 892 F.2d at 1183.

As an initial matter, Defendants contend that the use of two large law firms, one from New York City and one from Pittsburgh, was excessive and that the matter could have been capably handled by Buchanan alone. While the Court agrees that the Buchanan firm certainly has the expertise to have competently represented Plaintiffs in this case, it is also true that litigants generally are entitled to employ counsel of their own choosing. There are two Plaintiffs in this case and the NFL is headquartered in New York City while the Pittsburgh Steelers are

3

here. Thus, it is not unreasonable that the NFL would select New York counsel for representation. Defendants are ill-positioned to criticize the zealous advocacy of counsel for Plaintiffs, as they also vigorously litigated this matter. In sum, the Court will decline Defendants' request to strike the Debevoise counsel fees and costs in their entirety.

Turtle Creek Sportswear also challenges the claimed hourly rates, contests the number of hours spent on various tasks and objects to the recovery of certain costs as unsubstantiated and/or unreasonable. The Court will address these contentions seriatim.

1. Hourly Rates

A reasonable hourly rate is to be calculated in accordance with the "prevailing market rate" in the "relevant community." The United States Court of Appeals for the Third Circuit embraces the "forum rate rule," in which the relevant community is generally the forum in which the suit was filed. *Interfaith Community Organization v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703-05 (3d Cir. 2005); *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1187 (3d Cir. 1995) ("*PIRG*"). The relevant rate is to be calculated at the time of the fee petition, rather than the rate at the time the services were actually performed. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).[2] The Court must base its decision on the record, rather than a generalized sense of what is customary or proper. *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996). The rate should take into account prevailing counsel's skill and experience, the nature and complexity of the matter at issue, and should be evaluated with reference to the rates charged by comparable practitioners in the community. *Rode*, 892 F.2d at 1183. A reasonable fee is sufficient to attract competent counsel, but does not produce a windfall for the attorneys.

---

[2]This rule compensates for the delay in payment.

*Pub. Interest Research Group*, 51 F.3d at 1185. Routine tasks performed by senior partners at large firms should not be billed at their usual rates. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) (analogizing that Michaelangelo should not charge Sistine Chapel rates for painting a farmer's barn).

A three-step, burden-shifting framework is to be followed. First, the prevailing party must establish a prima facie case by producing sufficient evidence of the reasonable market rate for the essential character and complexity of the services rendered. *Lanni*, 259 F.3d at 149. If a prima facie case has been established, the opposing party then bears the burden of producing record evidence to contest this rate. *Id.* Finally, if the reasonable market rate is in dispute, a hearing must be conducted. *Id.*[3]

To satisfy the prima facie case requirement, the prevailing party must demonstrate that its requested rates are the prevailing rates in the community. *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence- *in addition to the attorney's own affidavits* -that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 225 n.2 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (emphasis added in *Smith*). If a party fails to meet its burden to demonstrate a prima facie case that the requested rates were the prevailing rates in the community, "the district court must exercise its discretion in fixing a reasonable hourly rate." *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996).

---

[3]*But see Blum v. Witco*, 829 F.2d 367, 377 (3d Cir. 1987) (holding that a hearing is only necessary if there are disputed questions of fact).

5

The record in this case reflects a significant disparity in the hourly rates charged by the attorneys from the New York firm and the Pittsburgh attorneys. The following table summarizes the information provided by Plaintiffs as to the number of hours worked and hourly rates of the Debevoise and Buchanan timekeepers on this case:

| Timekeeper | # Hours | 2008 Rate |
|---|---|---|
| B. Keller (New York) | 4.4 | $796/hour |
| J. Feigelson (New York) | 17.3 | $772/hour |
| M. Beam (New York) | 4.8 | $540/hour |
| M.J. Manzo (Pittsburgh) | 3.4 | $460/hour |
| B.H. Simmons (Pittsburgh) | 28.1 | $310/hour |
| K. Carradine (Pittsburgh) | 3.1 | $200/hour |

The biographies of each timekeeper were not provided, and thus it is difficult to determine their skill, experience, reputation, years of practice and other professional qualifications. Nor have Plaintiffs submitted supporting affidavits to show that the rates charged by other attorneys for comparable work in the relevant legal community. *See Smith, Blum* (reasonableness showing must rest on more than attorneys' own statements).

Defendants contend that the Debevoise attorneys' hourly rates are excessive for the Pittsburgh market based on their level of experience. Defendants represent that Bruce Keller graduated from law school in 1979; Jeremy Feigelson graduated from law school in 1991; and Michael Beam is an associate attorney who graduated in 2005. By comparison, Michael Manzo and Brian Simmons, the Buchanan lawyers who participated in this matter, graduated from law school in 1976 and 1999, respectively. As to Defendants' Pittsburgh-based attorneys, Henry Sneath graduated from law school in 1983 and bills at $400/hour, while associate Robert Wagner

graduated from law school in 2001 and bills at $225/hour.[1]  Ultimately, Defendants suggest that the Court reduce the Debevoise hourly rates as follows:  Keller -- $435/hour;  Feigelson -- $365/hour;  and Beam -- $200/hour.

Plaintiffs have not rebutted the evidence presented by Defendants regarding the prevailing rates in the relevant (Pittsburgh) community.  Notably, the New York rate charged by Beam ($540/hour), an associate attorney with six years of experience, is significantly higher than the Pittsburgh rate charged by Manzo ($460/hour), a shareholder with thirty-five years of legal experience.  The Court concludes, on this record, that the prevailing hourly rates proposed by Defendants are reasonable for the Pittsburgh legal community and it will adopt them.

Defendants also object to the hourly rate of $200/hour charged by Kim Carradine, a paralegal at Buchanan.  The Court agrees with Defendants that this hourly rate is excessive, by comparison with the hourly rates charged by associate attorneys, and it will assign a rate of $150/hour for paralegal services.  Defendants do not challenge the hourly rates of the Buchanan attorneys or the Klink timekeepers.

2.    Hours Claimed

District courts are instructed to conduct a "thorough and searching analysis" of the fee application.  *Interfaith Community*, 426 F.3d at 703 n.5.  A prevailing party may only recover for time reasonably expended and the Court must exclude time that was excessive, redundant or unnecessary.  *Id.* at 711.  As the hourly rate demanded goes up, there should be a corresponding decrease in the amount of time required to accomplish necessary tasks, due to counsel's experience and expertise.  *Ursic*, 719 F.2d at 677.  Time that would not be billed to a client

---

[1] Attorney William Helzlsouer represented Defendants from the inception of this action through the January 2011 evidentiary hearing.  The record does not reflect attorney Helzlsouer's hourly billing rate.

cannot be imposed on an adversary. *PIRG*, 51 F.3d at 1188. The Court cannot reduce an award sua sponte. Rather, the opposing party must make specific objections. *Interfaith Community*, 426 F.3d at 711. Once the opposing party does so, the burden shifts back to the party seeking fees to justify the size of its request. *Id.*

In this case, Turtle Creek Sportswear has raised numerous specific objections, as set forth in Exhibits B, C and D to their brief in opposition to the Petition. Plaintiffs have not filed a reply. The Court has scrutinized each objection and will reduce the hours claimed as follows:

a. Feigelson, 1/19/11, reduce by 0.5 hour for "attention to reporter query," as non-recoverable;

b. Feigelson, 1/24/11, reduce by 0.5 hour for "attention to obtaining merchandise samples," as duplicative of work performed by Buchanan and Klink;

c. Keller, 1/24/11, reduce by 1.0 hour for "revised cross exam points" as duplicative because he did not attend or participate in the evidentiary hearing;

d. Manzo, 1/26/11, reduce by 1.0 hour for "attend contempt hearing" as duplicative, because he did not participate in the evidentiary hearing;

e. Klink, 12/22/10, reduce by 0.5 hour as excessive, given the distances involved;

f. Klink, 1/23/11, reduce by 1.0 hour as excessive, given the distances involved;

g. Yanosick, 1/23/11, reduce by 0.5 hour as excessive, given the distances involved;

h. Klink, 1/24/11, reduce by 0.5 hour as excessive, given the distances involved;

i. Klink and Yanosick, 1/26/11, reduce each person's time by 4.0 hours. Claiming 9.0 hours for attendance at the evidentiary hearing was excessive. The lawyers billed substantially less time on January 26, 2011. Klink and Yanosick presented

uncomplicated fact witness testimony and had been thoroughly prepared by counsel the prior day. The hearing started at 1:30 p.m. and lasted a maximum of two hours. Except as noted above, the remainder of the hours claimed appear to be reasonable.

3. Costs

Defendants have raised challenges to many of the costs claimed by Plaintiffs, to which Plaintiffs have not filed a reply. Upon review, the Court agrees that the costs claimed by Debevoise for "Outside Copying," "Color and B&W Duplicating," "Westlaw Services" and "Word Processing" have not been adequately justified and no invoices in support have been submitted. Accordingly, those costs will be disallowed. The New York copying and duplicating costs are particularly puzzling, given the limited number of exhibits and the fact that the Enjoined Apparel items were obtained in Pittsburgh. Plaintiffs may recover Debevoise costs for lawyer travel and local lawyer transportation of $ 900.81. In addition, Plaintiffs may recover Buchanan costs for photocopies, color photocopies, express mail, online search service and the hearing transcript totaling $793.57, and Klink costs for purchases of merchandise and mileage totaling $140.00.

Accordingly, Plaintiffs may recover costs in the total amount of $1,834.38.

4. Summary of Counsel Fees and Costs

In accordance with the foregoing analysis, PLAINTIFFS' PETITION FOR COUNSEL FEES AND COSTS (Document No. 64) will be **GRANTED IN PART AND DENIED IN PART**. Defendants will be required to reimburse Plaintiffs for the counsel fees and costs found to be reasonable by the Court.

To summarize, Plaintiffs are entitled to recover reasonable counsel fees as set forth in the following table, which reflects the adjustments to hourly billing rates and numbers of hours claimed, as discussed above:

| **Timekeeper** | **# Hours** | **Hourly Rate** | **Total** |
|---|---|---|---|
| B. Keller | 3.4 | $435/hour = | $1,479.00 |
| J. Feigelson | 16.3 | $365/hour = | $5,949.50 |
| M. Beam | 4.8 | $200/hour = | $ 960.00 |
| Debevoise Subtotal: | | | $8,388.50 |
| | | | |
| M.J. Manzo | 2.4 | $460/hour = | $1,104.00 |
| B.H. Simmons | 28.1 | $310/hour = | $8,711.00 |
| K. Carradine | 3.1 | $150/hour = | $ 465.00 |
| Buchanan Subtotal: | | | $10,280.00 |
| | | | |
| J. Klink | 18.75 | $100/hour = | $1,875.00 |
| J. Yanosick | 14.5 | $100/hour = | $1,450.00 |
| Klink Subtotal: | | | $3,325.00 |
| | | | |
| **GRAND TOTAL:** | | | **$21,993.50** |

Plaintiffs may recover counsel fees for Debevoise in the amount of $8,388.50 plus costs of $900.81, for a total of $9,289.31; Plaintiffs may recover counsel fees for Buchanan in the amount of $10,280.00 plus costs of $793.57, for a total of $11,073.57; and Plaintiffs may recover $3,325.00 for work performed by Klink plus costs of $140.00, for a total of $3,465.00. The grand total of recoverable counsel fees and costs is **$23,827.88**.

Disgorgement of Profits

In its Order of February 18, 2011, the Court concluded that Turtle Creek Sportswear would be required to disgorge all profits it realized on sales of the Enjoined Apparel for the Steelers' 2010-2011 season, to wit, July 2010 to February 2011. The Court required Defendants to perform an accounting to enable the Court to fashion an appropriate profits disgorgement order. Defendants engaged J.E. Moody, CPA, to perform this task. In his report, Moody noted that Defendants do not have a sophisticated cost accounting system. Therefore, he undertook to estimate the profits attributable to sales of the Enjoined Apparel by determining total sales, total costs and total profits, and then applying the percentage of Turtle Creek Sportswear's total sales (5.19%) that resulted from Enjoined Apparel. Ultimately, Moody opined that Turtle Creek Sportswear realized net income of $5,863.00 from sales of the Enjoined Apparel during the relevant time period.

Plaintiffs have not responded to or challenged Moody's methodology or conclusion in any respect. Accordingly, the Court finds that Turtle Creek Sportswear realized profits of **$5,863.00** from sales of the Enjoined Apparel during the 2010-2011 Steelers football season and it will order Defendants to pay that amount to Plaintiffs, as disgorged profits.

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NFL PROPERTIES LLC and PITTSBURGH STEELERS SPORTS, INC., <br>     Plaintiffs, <br><br> v <br><br> NICHOLAS WOHLFARTH and JENNIFER WOHLFARTH *doing business as* TURTLE CREEK SPORTSWEAR <br>     Defendants. | ) <br> ) <br> ) <br> )   2:05-cv-67 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER OF COURT

AND NOW, this 13th day of April, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that PLAINTIFFS' PETITION FOR COUNSEL FEES AND COSTS (Document No. 64) is **GRANTED IN PART AND DENIED IN PART.** On or before June 15, 2011, or upon such other terms as the parties may agree upon, Defendants shall reimburse Plaintiffs for the following:

a) Debevoise counsel fees of $8,388.50, plus costs of $900.81, for a total of $9,289.31;

b) Buchanan counsel fees of $10,280.00, plus costs of $793.57, for a total of $11,073.57; and

c) Klink fees of $3,325.00, plus costs of $140.00, for a total of $ 3,465.00.

The grand total of recoverable counsel fees and costs is **$23,827.88**.

In addition, on or before May 15, 2011, Defendants shall pay to Plaintiffs **$5,863.00**, as disgorged profits from sales of the Enjoined Apparel during the 2010-2011 football season.

Defendants' failure, neglect or refusal to timely and fully comply with the terms, conditions and requirements of this Order of Court may result in the imposition of additional sanctions including, but not limited to, a fine in an amount to be determined per day of non-compliance.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Michael J. Manzo, Esquire**
Email: michael.manzo@bipc.com
**Brian H. Simmons, Esquire**
Email: brian.simmons@bipc.com
**Bruce P. Keller, Esquire**
Email: bpkeller@debevoise.com
**Jeremy Feigelson, Esquire**
Email: jfeigelson@debevoise.com

**Henry M. Sneath, Esquire**
Email: hsneath@psmn.com
**Robert L. Wagner, Esquire**
Email: rwagner@psmn.com